**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| TOMMY DONNELL,<br><br>    Petitioner<br><br>v.<br><br>ACTING WARDEN J.L. JAMISON<br><br>    Respondent | **Civil Action No. 19-5301(RMB)**<br><br>**OPINION** |

**BUMB, District Judge**

Petitioner Tommy Donnell, incarcerated in the Federal Correctional Institution in Fairton, New Jersey, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. Petitioner challenges the sanctions imposed upon him by the Bureau of Prisons ("BOP") following a prison disciplinary action at the Federal Correctional Institution in Talladega, Alabama ("FCI Talladega"), for possession of drug paraphernalia. (Pet., ECF No. 1.) Respondent[1] filed an Answer, opposing habeas relief. (Answer, ECF No. 5.) For the reasons discussed below, the Court denies the petition.

---

[1] The Court has substituted Acting Warden J.L. Jamison as the Respondent in this matter, pursuant to Fed. R. Civ. P. 25(d).

I.   BACKGROUND

Petitioner is serving a 188-month term of imprisonment, currently incarcerated at FCI Fairton in Fairton, New Jersey. (Declaration of Ondreya Barksdale ("Barksdale Decl.") ECF No. 5-3, ¶2; Ex. A, ECF No. 5-4 at 1.)[2] Petitioner's projected release date is August 8, 2021. (Ex. A, ECF No. 5-4 at 2.) The incident resulting in Petitioner's sanction occurred on October 27, 2017, at FCI Talladega in Alabama. (Declaration of Konrad Adamiec ("Adamiec Decl.") ECF No. 5-1, ¶2; Ex. A, ¶4, ECF No. 5-2 at 2.)

A BOP staff member prepared an incident report, describing his search of Petitioner's cell:

> On 10-27-2017, at approximately 10:00 a.m., I conducted a search of cell S09-008 assigned to inmate Donnell, Tommy (Reg#49728-018). Inmate Donnell is the only inmate assigned to this cell. Upon conducting the search, I discovered a syringe with a small amount of a clear liquid concealed under the toilet and wrapped in a paper towel. The item was retrieved and the inmate was then escorted to the Lieutenant[']s Office without further incident.

(Adamiec Decl., Ex. A, ¶11, ECF No. 5-2 at 2.) Upon delivery of the Incident report to Petitioner, he stated:

> It's not mine. It could be my ex-cellmate Kujat. He's locked up now for SIS investigation. The FBI is looking for him everything. I looked around on the floor but I didn't think to look under the toilet because it's the toilet. I smoke and I don't

---

[2]   All page references in citations to ECF are to the page numbers assigned by the Court's electronic filing system, CM/ECF.

> disown that but this is not mine. I am diabetic but that's not mine.

(Adamiec Decl., Ex. A, ¶24, ECF No. 5-2 at 3.) On October 31, 2016, Petitioner was advised of his rights in connection with an upcoming disciplinary hearing. (Adamiec Decl., Ex. B; ECF No. 5-2 at 5.)

Petitioner appeared before the UDC Committee and responded to the accusation:

> I am willing to test any test to prove my innocent. I understand the policy of the BOP. I haven't done anything. It's not mine, this is not what I do. I am short and don't cause any trouble. Could you please roll the cameras back. I work all day.

(Adamiec Decl., Ex. A, ¶17; ECF No. 5-2 at 2.) Petitioner was charged with a Prohibited Act, Possession of Narcotics Paraphernalia, and the matter was referred to a Discipline Hearing Officer (DHO) for further proceedings. (Id., ¶10.) In the meantime, Petitioner was placed in the Special Housing Unit ("SHU"). (Id., ¶27, ECF No. 5-2 at 3.)

The disciplinary hearing took place on November 6, 2017. (Adamiec Decl., Ex. D, ¶I.B; ECF No. 5-2 at 9.) During the hearing, Petitioner confirmed that he had waived staff representation and did not want to call witnesses. (Id., ¶II.A, III.C.1) Petitioner stated that his ex-cellmate was a frequent drug user, and the syringe belonged to him. (Id., ¶III.B.)

The DHO concluded that the act was committed as charged. (Adamiec Decl., Ex. D., ¶IV; ECF No. 5-2 at 9.) The DHO reasoned that Petitioner was the only inmate assigned to the cell when the contraband was found; he was responsible for any contraband found in his cell; and Petitioner's knowledge of his ex-cellmate's drug use should have led him to conduct a thorough search after his cellmate left the cell. (Id.) The DHO imposed sanctions including: (1) disallowance of 41 days of good conduct time; (2) 30 days of disciplinary segregation; and (3) loss of 120 days of phone and visiting privileges. (Id., ¶VI.) Petitioner received the DHO report on November 8, 2017. (Id.)

BOP regulations required Petitioner to appeal the DHO decision to the Regional Office within twenty days. 28 C.F.R. § 542.14(a). Petitioner appealed on December 5, 2017, one week after the deadline. (Barksdale Decl., ¶7, ECF No. 5-3 at 3; Ex. B, ECF No. 5-4 at 8.) On December 7, 2017, the Regional Office rejected the appeal for failure to include a copy of the DHO report or otherwise identify the discipline challenged and because all four copies were illegible. (Id.) Petitioner resubmitted his appeal on January 9, 2018. (Id.) On January 10, 2018, the Regional Office rejected the appeal as untimely. (Id.) Petitioner appealed to the BOP Central Office on February 13, 2018. (Id. at 9.) On March 2, 2018, the Central Office rejected the appeal because the initial appeal was untimely. (Id.)

4

The Central Office permitted Petitioner to resubmit his appeal if he could provide a staff member statement explaining that the untimeliness was outside of his control. (Barksdale Decl., Ex. B, ECF No. 5-4 at 9.) On March 21, 2018, Donnell submitted a memorandum from his unit manager, explaining the untimeliness of the submission to the Central Office but not the underlying untimeliness of the appeal of the DHO decision. (Pet, Ex. 3; ECF No. 1-1 at 8.) Petitioner submitted a second appeal to the Central Office on April 4, 2018. (Barksdale Decl., Ex. B; ECF No. 5-4 at 9.) The Central Office rejected it as untimely on May 2, 2018. (Id.)

II.  DISCUSSION

   A.  The Petition

Petitioner asserts the following in support of his request for restoration of 41 days of good conduct time and/or expungement of the sanctions. Petitioner shared Sigma A Cell 501-008 at FCI Talladega with Inmate Kujat. (Pet., ECF No. 1 at 6.) Inmate Kujat was placed in the Special Housing Unit while SIS investigated whether he received narcotics via a package in the mail. (Id.) Inmate Kujat was not returned to Sigma A Cell 501-008 and his belongings were removed. (Id.) Petitioner contends that SIS failed to search the cell thoroughly for narcotics after Kujat was removed. (Id.) Petitioner conducted a cursory search of the cell,

5

but he did not find the syringe. (Pet., ECF No. 1 at 6.) Petitioner never had a violation before this incident. (Id.)

Petitioner was in an RDAP program at FCI Fairton, and he tried to get Inmate Kujat to move due to his drug habit. (Id. at 7.) Petitioner was deprived of benefits he could otherwise have received but for the Prohibited Act violation. (Id.) Petitioner asserts he exhausted administrative remedies. (Id.)

B.  The Answer

Respondent submits that the petition should be dismissed for failure to timely exhaust administrative remedies. (Answer, ECF No. 5 at 10-13.) Petitioner's initial appeal to the Regional Director was untimely because it was due on November 28, 2017, but not filed until December 5, 2017. (Barksdale Decl., Ex. B, ECF No. 5-4 at 8-9.) Moreover, the December 5, 2017 appeal did not include the DHO report and BOP staff was unable, at that time, to determine if it was timely. (Answer, ECF No. 5 at 12.) The Regional Director's response to Petitioner's January 9, 2018 appeal included the DHO report and made clear that the initial appeal was untimely. (Barksdale Decl., Ex. B, ECF No. 5-4 at 8. ("Untimely from 11-08-17 thru 12-05-17.")) Given an opportunity to address the untimeliness of the initial appeal, Petitioner failed to do so. (Pet., Ex. 3, ECF No. 1-1 at 8.) Respondent contends that failure to timely exhaust administrative remedies warrants dismissal of the petition.

6

Respondent also addressed the merits of the petition. Respondent argues that Petitioner received the required due process protections. First, the BOP provided written notice of the charges against Petitioner on October 27, 2017, more than one week before his disciplinary hearing. (Adamiec Decl., Ex. A, ¶11, ECF No. 5-2 at 2.) Second, BOP staff notified Petitioner of the upcoming hearing and advised him of his rights, including the right to a written copy of the charges against him, the right to staff representation, and the right to call witnesses. (Adamiec Decl., Ex. B and Ex. C, ECF No. 5-2 at 5-7.) Third, the hearing occurred on November 6, 2017, and Petitioner waived his rights to a staff representative and to present witnesses. (Adamiec Decl., Ex. D, ¶¶II, III.C.1, ECF No. 5-2 at 9.) Fourth, the DHO considered the BOP staff member's account, Petitioner's account, and the photograph of the contraband found in Petitioner's cell. (Adamiec Decl., Ex. D, ¶V, ECF No. 5-2 at 10.) Fifth, the evidence was sufficient to meet the "some evidence" standard, based on constructive possession of the contraband. (Answer, ECF No. 5 at 16-8.) Sixth, BOP regulations authorized the sanctions imposed for possession of drug paraphernalia. (Id. at 11, citing 28 C.F.R. § 541.3, Table 1, Greatest Severity Level Prohibited Acts (111)).

C.  Exhaustion

There is a judicially created exhaustion requirement for habeas relief under 28 U.S.C. § 2241. Callwood v. Enos, 230 F.3d

7

627, 634 (3d Cir. 2000) (citations omitted). Courts may excuse the exhaustion requirement if a prisoner demonstrates that exhaustion would be futile. See Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998). Demonstrating futility, however, is a high standard. See, e.g., Muniz v. Zickefoose, 460 F. App'x 165, 166-67 (3d Cir. 2012); Lindsay v. Williamson, 271 F. App'x 158, 159 (3d Cir. 2008).

Federal regulations govern exhaustion of remedies within the BOP. See 28 C.F.R. §§ 542.10-542.19. When an inmate appeals the disciplinary decision of a DHO, the inmate may skip the first step of the process, informal resolution, and submit his appeal to the Regional Director. 28 C.F.R. § 542.14(d)(2) ("DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located."). An inmate must appeal the DHO decision to the Regional Director within "20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.15(a). The final step is appeal to the BOP Central Office. Id.

In this case, Petitioner proceeded through each level of administrative review, but he failed to properly exhaust administrative remedies because his initial appeal to the Regional Director was untimely. "[F]ailure to satisfy the procedural rules of the Bureau's administrative process constitutes a procedural default." Moscato, 98 F.3d at 760-61. Therefore, the Court

8

dismisses the petition based on procedural default. The Court will, nonetheless, address the merits of the petition in the alternative.

   D.   Due Process

      1.   Standard of Law

28 U.S.C. § 2241 provides, in relevant part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions . . .
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless—
> . . .
>    (3) He is in custody in violation of the Constitution or laws or treaties of the United States; . . .

"Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct." Denny v. Schultz, 708 F.3d 140, 143 (3d Cir. 2013) (citing 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20 (2008)). Based on this statutorily created right, "a prisoner has a constitutionally protected liberty interest in good time credit." Denny, 708 F.3d at 144 (quoting Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing Wolff v. McDonnell, 418 U.S. 539, 556–57 (1974)).

The Supreme Court defined the due process protections required when a prison disciplinary hearing may result in loss of good conduct time. The five due process protections include: 1) the right to appear before an impartial decision-making body; 2)

9

twenty-four hour advance written notice of the charges; 3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; 4) assistance from an inmate representative, if the charged inmate is illiterate or complex issues are involved; and 5) a written decision by the fact-finder, including the evidence relied on and the reason for the disciplinary action. Wolff, 418 U.S. at 546-71.

Further, the DHO's decision must be supported by "some evidence." Superintendent, Mass. Corr. Inst. at Walpole v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Id. at 455 (quoting United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927)). Determining whether the standard has been met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Hill, 472 U.S. at 455. Instead, courts should determine "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56. The BOP has substantially adopted and in some instances gone beyond these requirements by promulgating regulations governing its disciplinary procedures. Frankenberry v. Williams, 677 F. Supp.

793, 796 (M.D. Pa.) aff'd, 860 F.2d 1074 (3d Cir. 1988); 28 C.F.R. §§ 541.1 to 541.8.

        2.   Analysis

In the Third Circuit, constructive possession may be found, for purposes of meeting the "some evidence" standard in prison disciplinary proceedings, where contraband is found in a space accessible from within a prisoner's shared cell. Denny v. Shultz, 708 F.3d 140, 147 (3d. 2013). This comports with the due process requirement because the prisoner is on notice that he must keep his area free of contraband. Id. at 146.

The doctrine of constructive possession, the Third Circuit has explained, has its roots in a BOP policy that holds inmates responsible for keeping their assigned areas free of contraband. Id.; see also BOP Program Statement 5270.09, App. C at 39, ¶4.[3] In a shared cell, all parts of the cell are equally accessible to each prisoner housed in the cell and each prisoner is responsible for keeping the entire cell free from contraband. Id. Thus, any contraband found within the cell is constructively possessed by each of the inmates housed in that cell. Id.

Petitioner's sole challenge is to the DHO's finding that the syringe found under the toilet of his cell belonged to him. Although Petitioner presented evidence that the syringe could have

---

[3] Available at https://www.bop.gov/policy/progstat/5270_009.pdf.

11

belonged to his cellmate, who was under investigation for receiving narcotics by mail, this does not preclude the DHO's decision that Petitioner possessed the syringe because it was found in his cell. See Denny, 708 F.3d at 146 ("The weapons may have belonged to [the petitioner's] cellmate, but in accordance with Hill, prison officials did not violate [the petitioner's] due process rights when they deprived him of his good time credits.")) Thus, Respondent afforded Petitioner due process.

III. CONCLUSION

For the reasons discussed above, the Court dismisses the petition as procedurally defaulted and alternatively denies the petition on the merits.

An appropriate Order follows.

Date: **April 24, 2020**

                              s/Renée Marie Bumb
                              **RENÉE MARIE BUMB**
                              **United States District Judge**

13